IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HANNAH L. | : | CIVIL ACTION |
| A MINOR INDIVIDUALLY AND BY | : | |
| AND THROUGH HER PARENTS | : | NO. 12-4595 |
| GEORGE L. AND SUSAN F., OF | : | |
| DOWNINGTOWN, PA, | : | : |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DOWNINGTOWN AREA SCHOOL | : | |
| DISTRICT, | : | |
| Defendants. | : | |

**MEMORANDUM**

Jones, II., J.                                                                                                          July 24, 2014

I.   Introduction

Plaintiffs, Hannah L. and her parents Dr. George L. and Susan F., initiated this action against Defendant, Downingtown Area School District ("District"). Plaintiffs seek to reverse Pennsylvania Special Education Hearing Officer William F. Culleton, Jr.'s ("Hearing Officer") decision, in part. Defendants have also challenged the decision. The Hearing Officer concluded that the District failed to provide Hannah with a free appropriate public education (FAPE) in the least restrictive environment (LRE) for the 2011-2012 school year. The Hearing Officer, however, also held that Hannah's private school program was inappropriate and denied her parents tuition reimbursement. Plaintiffs challenge the latter ruling, arguing that Hannah's private school placement is highly successful and have requested tuition reimbursement for the 2011-2012 school year[1] and reasonable attorney's fees, pursuant to the Individuals with

---

[1] The parties reached an earlier settlement agreement whereby the District reimbursed the parents for the private school placement during the 2010-2011 school year.  Admin R. Ex. 8., Settlement Agreement ¶ 1.

Disabilities Education Act (IDEA).  Defendants contest the Hearing Officer's conclusion that the District did not provide Hannah with a FAPE in the LRE and seek reversal on that point.

Presently before the Court are the parties' cross-motions for judgment on the supplemented administrative record (Dkt. Nos. 26 & 27) and the responses thereto.  For the reasons that follow This Court denies both the Defendant's motion and the Plaintiff's cross-motion, and affirms Hearing Officer Culleton's decision.

II.     Background

    a.  Factual Background[2]

Hannah L., a twelve-year-old child residing in Downingtown Area School District, has specific learning disabilities in the areas of reading fluency, comprehension, and written language.  (Administrative Record ("Admin. R.") Ex. 5, Stipulations of Fact (Stip. Fact) ¶ 1.) Hannah's parents withdrew her from the District in June 2010, before she received any special education services.  *Id.*  They enrolled Hannah at the Kimberton Waldorf School (Kimberton) in Phoenixville, Pennsylvania, an institution recognized by the Commonwealth as a nonpublic school.  *Id.* ¶¶ 2, 6.

At Kimberton, Hannah is educated with her nondisabled peers, except during the period she receives pull-out supplemental reading instruction through Chester County Intermediate Unit (CCIU).  *Id.* ¶ 5.  During the 2011-2012 school year, Hannah received supplemental instruction with a small group for forty minutes, twice weekly and individually for thirty minutes, once weekly.  *Id.* ¶ 9.  During the prior school year, she received supplemental instruction with a small group for approximately thirty minutes, twice weekly.  *Id.*  In addition, Hannah occasionally receives support from a CCIU reading specialist in the regular classroom.  *Id.* ¶ 10.

---

[2] The parties have stipulated to the facts on the record.

Kimberton does not follow Pennsylvania's standards-based curriculum. *Id.* ¶ 7. Rather, it believes that "children learn best through strong experiences that stir the emotions." *Id.* "Kimberton meets that need by presenting subjects pictorially and dramatically, and by cultivating their imaginative capacities." *Id.*

The CCIU reading specialist at Kimberton used research-based instructional strategies with Hannah, but she did not use peer reviewed curriculum, opting instead for Kimberton's own curriculum. *Id.* ¶ 11. Additionally, she utilized Wilson Reading System materials to remediate specific reading issues in the regular classroom, but she did not use the program in a comprehensive manner, nor was she certified as a Wilson tutor. *Id.* ¶ 12. The reading specialist administered the Qualitative Reading Inventory-Third Edition and the Test of Auditory Analysis Skills to Hannah. *Id.* ¶ 13. She did not, however, conduct a formal reading fluency measure. *Id.* Kimberton's evaluation of Hannah's writing was based on her creativity rather than a comparable metric system. (Admin R. Ex. 8, Individualized Education Program (IEP) at 29.)

In June 2011, the District completed a Reevaluation Report assessing Hannah's academic achievement after completing one school year at Kimberton. (Admin R. Ex. 8, Reevaluation Report (RR) at 1.) Hannah's Total Reading performance was rated as "limited." *Id.* at 11. She scored as "average" in Phonemic Awareness, but was "limited" in Phonics Knowledge, Basic Reading Skills, and Reading Comprehension, and she rated as "very limited" in Broad Reading. *Id.* On her writing assessment, Hannah scored in the "average" range for Spelling/Punctuation and Sentence Combining, but she was "below average" in Logical Sentences, "poor" in Vocabulary, and "very poor" in both Contextual Conventions and Story Composition. *Id.* Hannah fell in the "average" range for Mathematics, generally.

3

The District integrated this evaluation into its proposed IEP for Hannah. (IEP at 5-9.) The District's IEP recommended that Hannah spend five out of six and a half hours each day in her regular classroom. *Id.* at 24. The IEP form describes the mandate under IDEA, requiring "each public agency to ensure that, to the maximum extent appropriate, students with disabilities . . . are educated with students who are not disabled." *Id.* at 22. This form also directs the IEP Team to note what alternatives they considered and to explain why they deemed those alternatives unsatisfactory. *Id.* The District did not provide a statement explaining why Hannah would not participate with her nondisabled peers in the regular education class. *Id.* The District merely stated that "Hannah will not participate in regular education when she is in the Learning Support Classroom during Language Arts." *Id.* The District does note in another section of the IEP that it considered a "[r]egular education environment with supplementary aids and services," but rejected that option because it "would not meet Hannah's need for specifically designed instruction at this time." *Id.* at 37.

Hannah's father, Dr. George L., is a doctorate-level psychologist employed by Melmark, a school and residential program for individuals with intellectual disabilities. (Admin R. Ex. 7, Curriculum Vitae (CV) at 1; Stip. Fact ¶ 15.) He is not a licensed clinical psychologist, nor is he a certified school psychologist in Pennsylvania. (Stip. Fact ¶ 15.) His extensive publication record indicates a specialty in behavioral psychology. (CV at 2-5.) Dr. L has never personally assessed Hannah's learning disability. (Stip. Fact ¶ 15.) In his opinion, however, Hannah has made "meaningful educational progress at Kimberton" since her enrollment there in 2010. *Id.* ¶ 17.

      b. Procedural Background

Plaintiffs filed an administrative Due Process complaint challenging the District's proposed IEP, which recommended Hannah attend a public school within the District instead of continuing at Kimberton. Compl. ¶¶ 2-3. The presiding Special Education Hearing Officer decided the case on a set of stipulated facts prepared by the parties. Compl. ¶ 3. In a written decision, dated May 15, 2012, he determined that the District had failed to provide Hannah with a free appropriate public education (FAPE) in the least restrictive environment (LRE). (Admin R. Ex. 2, Hearing Officers Decision (HOD) at 12.) He also concluded that Kimberton was an inappropriate placement and denied the parent's request for tuition reimbursement. *Id.*

On August 13, 2012, the Plaintiffs filed a timely appeal to this Court seeking a reversal on the Hearing Officer's decision denying them tuition reimbursement. Compl. ¶ 7. Plaintiffs also requested reasonable attorney's fees. *Id.* Defendant filed an answer citing affirmative defenses and asserting a counter-claim. Def.'s Answer at 1-7.

III. Legal Standards

      a. Individuals with Disabilities Education Act

Congress enacted the IDEA to address the lack of appropriate educational services available for disabled children. 20 U.S.C. § 1400(c)(2). It found that educating children with disabilities can be made more effective by "providing appropriate special education and related services, and aids in the regular classroom." 20 U.S.C. § 1400(c)(5)(D).

States receiving federal funding under this Act must provide all disabled students with a free appropriate public education (FAPE). 20 U.S.C § 1412(a)(1). A FAPE is "provided at public expense, under public supervision and direction." 20 U.S.C. § 1401(9)(A). It must "meet the standards of the State educational agency" and "include appropriate preschool, elementary

school, or secondary school education," in conformity with a disabled student's individualized education program (IEP). 20 U.S.C. § 1401(9)(B)-(C). "[I]f personalized instruction is being provided with sufficient supportive services to permit the child to benefit from the instruction, and the other items on the definitional checklist are satisfied, the child is receiving a 'free appropriate public education' as defined by the Act." *Board of Educ. of Hendrick Hudson Central School District, Westchester County v. Rowley*, 458 U.S. 176, 189 (1982). The Act provides a "'basic floor of opportunity'" granting "access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." *Id.* at 201. It does not require a State to furnish "every special service necessary to maximize each handicapped child's potential." *Id.* at 199. There is no single "test for determining the adequacy of educational benefits conferred upon all children covered by the Act." *Id.* at 202.

An IEP is a "written statement for each child with a disability that is developed, reviewed, and revised" annually. 20 U.S.C. § 1414(d)(1)(A)(i). It must include "a statement of the child's present levels of academic achievement and functional performance," "a statement of measurable annual goals," and a method of measuring those goals. 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(III). In developing an IEP, members of the IEP Team must consider the "strengths of the child," "the concerns of the parents for enhancing the education of their child," the child's evaluations, and his or her "academic, developmental, and functional needs." 20 U.S.C. § 1414(d)(3)(A)(i)-(iv).

IDEA requires schools to place disabled children in the least restrictive environment by educating them in the same classroom as their nondisabled peers "to the maximum extent possible." 20 U.S.C. § 1412(a)(5)(A). An IEP must provide an explanation when a child does

not participate with nondisabled children in the regular classroom setting. 20 U.S.C. § 1414(d)(1)(A)(i)(V).[3]

Additionally, IDEA provides procedural safeguards for disabled children and their parents. 20 U.S.C. § 1415. A parent is entitled to challenge the educational services his or her child is receiving. 20 U.S.C. § 1415(b)(6). After a complaint is lodged, State or local educational agencies must provide an "impartial due process hearing." 20 U.S.C. § 1415(f)(1)(A). "The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." *Shaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005); *see also L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 392 (3d Cir. 2006). Any party aggrieved by the outcome of an administrative proceeding overseen by a State educational agency may challenge that decision "in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A). In such instances, "the court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(C).

When evaluating a challenge under IDEA, a court must determine (1) if "the State complied with the procedures set forth in the Act," and (2) if "the individualized educational program developed through the Act's procedures [was] reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. 206-07. "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." *Id.* at 207.

---

[3] The Commonwealth of Pennsylvania is operating under a federal court order requiring Districts to consider the *Oberti* factors in evaluating the LRE. *Gaskin v. Pennsylvania*, 389 F.Supp. 628, 637 (E.D.Pa. 2005). Written explanations in the IEP are not required, but they are encouraged. Pls.' Mot. J. Supplemented Admin. R., Exhibit D at 1-2.

The Third Circuit has developed a more extensive analysis with respect to the Act's mainstreaming requirement. *Oberti by Oberti v. Board of Educ. of Borough of Clementon School District*, 995 F.2d 1204, 1217-18 (3d Cir. 1993). First, a court must determine "whether a child with disabilities can be educated satisfactorily in a regular class with supplemental aids and services." *Id.* at 1217. Several factors are relevant to this analysis "including: (1) whether the school district has made reasonable efforts to accommodate the child in a regular classroom; (2) the educational benefits available to the child in a regular class, with appropriate supplementary aids and services, as compared to the benefits provided in a special education class; and (3) the possible negative effects of the inclusion of the child on the education of other students in the class." *Id.* at 1217-18. If a court determines that a segregated classroom setting is appropriate for the disabled child, it must next analyze "whether the school has included the child in school programs with nondisabled children to the maximum extent appropriate." *Id.* at 1218.

During a review of the IDEA challenge, a court "must be careful to avoid impose [its] view of preferable educational methods upon the States." *Rowley*, 458 U.S. at 207. "[C]ourts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy.'" *Id.* at 208 (citation omitted).

A court reviewing a challenge under IDEA may award attorney's fees "to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). The amount of attorney's fees that a court may award is "based on rates prevailing in the community in which the action or proceeding arose and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C).

Tuition reimbursement is also an "appropriate" remedy under the IDEA. 20 U.S.C. § 1415(i)(C); *School Committee of the Town of Burlington, Mass. v. Department of Education of the Commonwealth of Mass.*, 471 U.S. 359, 369 (1985). The plain meaning of the statue

"confers broad discretion on the court" to fashion a proper remedy in each case. *Id.* at 369. When a court finds (1) "that a private placement desired by the parents was proper under the Act" and (2) "that an IEP calling for placement in public schools was inappropriate," then it may direct the school district to reimburse the parents for the unilateral private school placement. *Id.* at 370. When a parent unilaterally places his or her student in a private school, the § 1401(a)(9) requirements for a free appropriate public education are inapplicable. 20 U.S.C. § 1401(a)(9); *Florence County School District Four v. Carter*, 510 U.S. 7, 13 (1993). Reimbursement is "not necessarily barred by a private school's failure to meet state education standards." *Id.* at 14. However, "parents who unilaterally change their child's placement during the pendency of a review proceeding, without the consent of state or local school officials, do so at their own risk. If the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement for any interim period." *Burlington*, 471 U.S. at 373-374. The cost of reimbursement "may be reduced or denied . . . upon a judicial finding of unreasonableness with respect to the actions taken by the parents." 20 U.S.C. § 1412(a)(10)(B)(iii).

      b. <u>Standard of Review</u>

The proper standard for review of the administrative record is "modified de novo." *S.H. v. State-Operated School Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). A district court is required to give "'due weight' to the underlying administrative proceedings." *Id.* (citation omitted). "Factual findings from the administrative proceedings are to be considered prima facie correct." *Id.* (citation omitted).

"[T]he court is free to accept or reject the agency findings depending on whether those findings are supported by the new, expanded record and whether they are consistent with the

requirements of the Act." *Oberti*, 995 F.2d at 1220. But, when a court does reject an agency's findings, it "must explain why it does not accept the ALJ's findings of fact to avoid the impression that it is substituting its own notions of sound educational policy for those of the agency it reviews." *City of Newark*, 336 F.3d at 270.

IV. Analysis

    a. Defendant's Motion for Judgment on the Supplemented Administrative Record

Defendant failed to provide Hannah with a free appropriate public education (FAPE) in the least restrictive environment (LRE), as determined by the Special Education Hearing Officer.

The Hearing Officer analyzed the District's proposed IEP according to the factors detailed in *Oberti by Oberti v. Board of Education of Borough of Clementon School District*. HOD at 4-9; *Oberti*, 995 F.2d at 1217-18. In *Oberti*, the Third Circuit noted that if a school has "given no serious consideration to including the child in a regular class with such supplementary aids and services and to modifying the regular curriculum to accommodate the child, then it has most likely violated the Act's mainstreaming directive." *Oberti*, 995 F.2d at 1216. The Hearing Officer applied this reasoning to the evidence presented by the parties. HOD at 7-8. The Hearing Officer found that the District provided only lip-service to the IDEA's mainstreaming requirement. *Id.* at 7.

Defendant contends that the Hearing Officer based his decision on the lack of evidence alone. Def.'s Mot. J. Suppl. Admin. R. at 13. On the contrary, the Hearing Officer's decision notes all instances where the District attempted to meet the *Oberti* standard. HOD at 7-8. The Hearing Officer weighed this evidence against the evidence presented by the Plaintiffs and found their case more convincing. *Id.* at 9. The District itself agreed to the stipulated facts in this case. Stip. Facts 1-5. Moreover, it had ample opportunity to address the *Oberti* factors in Hannah's

IEP. IEP at 22. The Hearing Officer's decision was not based on a lack of evidence, but rather a lack of persuasive evidence on the part of the District. HOD at 9. While Defendant correctly asserts that the burden of persuasion is on Plaintiffs, Defendant fails to account for evidence they presented to counter the District's position. Def.'s Mot. J. Suppl. Admin. R. at 13. Specifically, Plaintiffs detailed alternatives to the District's proposed IEP that were used in Hannah's private school placement. RR at 2. They also expressed their belief that Hannah would benefit most in a classroom setting that included her nondisabled peers. *Id.*

Defendant also challenges the Hearing Officer's decision on the grounds that it was based on a procedural issue rather than a substantive defect. Def.'s Mot. J. Suppl. Admin. R. at 17. The District asserts that the Hearing Officer never analyzed whether the IEP was in fact the least restrictive for Hannah. *Id. Oberti*, however, first asks whether a child can be educated with his or her nondisabled peers and, if so, whether the school has educated the student with his or her nondisabled peers to the "maximum extent appropriate." *Oberti*, 995 F.2d at 1218. The Hearing Officer need not reach the second part of the test, if the District fails the first part of the analysis.

The District's concern that the Hearing Officer conflated the IDEA's LRE and FAPE requirements is unsupported by the record. Def.'s Mot. J. Suppl. Admin. R. at 20. The Hearing Officer specifically noted that he found that the "offer of a FAPE was appropriate in all other substantive and procedural respects." HOD at 8 n.6. The Hearing Officer's LRE analysis was independent of the FAPE analysis. *Id.* at 7-9. The Hearing Officer considered the District's failure to identify reasons for Hannah's exclusion from the regular classroom, a procedural issue, to constitute a denial of a FAPE. *Id.* at 9. This reasoning is within the statutory guidelines cited by Defendant. *Id.* at 21-22; 20 U.S.C. § 1415(f)(3)(E)(ii)(I).

The District denied Hannah a FAPE in the LRE. This Court affirms the Hearing Officer's decision in this respect.

    b. <u>Plaintiffs' Motion for Judgment on the Supplemented Administrative Record</u>

        i. <u>Tuition Reimbursement</u>

The private school placement was inappropriate and Plaintiffs are not entitled to tuition reimbursement.

Tuition reimbursement is an appropriate remedy under IDEA when a court finds that the private school placement by the parents was appropriate under the Act and that the proposed public school placement was inappropriate. 20 U.S.C. § 1415(i)(C); *Burlington*, 471 U.S. at 370. The District failed to provide a FAPE,[4] thus this Court need only evaluate the appropriateness of the private school placement.[5]

The Third Circuit has noted that an appropriate placement under the "IDEA 'calls for more than a trivial educational benefit.'" *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 247 (3d Cir. 1999) (citation omitted). Moreover, what is 'appropriate' cannot be "reduced to a single standard." *Id.* Any educational benefit "'must be gauged in relation to the child's potential.'" *Id.* (citation omitted). A parent's decision to unilaterally place a child in a private placement is appropriate if "it provides significant learning and confers meaningful benefit." *Mary T. v. School Dist. of Philadelphia*, 575 F.3d 235, 243 (3d Cir. 2009) (citation omitted). A

---

[4] *See supra* section a (discussing District's denial of FAPE).

[5] Plaintiffs argue, in the alternative, that the Americans with Disabilities Act and/or Section 504 of the Rehabilitation Act also authorize tuition reimbursement. While the standards for awarding tuition reimbursement under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act differ slightly from the standard under the IDEA, all three require that Plaintiff demonstrate that the private school placement was an appropriate placement. *Burlington*, 471 U.S. at 370 (discussing tuition reimbursement under IDEA); *Molly L. v. Lower Merion School District*, 194 F. Supp. 2d 422, 429(E.D.Pa. 2002) (discussing tuition reimbursement in context of Section 504).

parent "need not seek out the perfect private placement in order to satisfy IDEA." *Ridgewood*, 172 F.3d at 249 n.8.

Plaintiffs contend that Hannah's placement at Kimberton was appropriate. Compl. ¶ 2. They assert that the Hearing Officer "failed to give sufficient consideration to evidence in the record that Hannah made significant gains in her 2011-2012 school year, academically, socially, and behaviorally while at Kimberton." *Id.* ¶ 30. Additionally, they fault the Hearing Officer for failing to give greater weight to the testimony of Hannah's father, a doctorate-level psychologist, that Hannah was making significant gains in her private school placement. *Id.* Similarly, the Plaintiffs challenge the Hearing Officer's finding that the private school placement had not adequately addressed Hannah's learning disability. *Id.* ¶ 31.

Plaintiffs supplemented the administrative record with additional testing that purports to demonstrate Hannah's academic growth during her placement there. Pls.' Mot. J. Suppl. Admin. R., Exhibit C (Ex. C). The District challenged these test results through a report it added to the administrative record by Dr. Monica McHale-Small. Pls.' Mot. J. Suppl. Admin. R., Exhibit E (Ex. E). Dr. McHale-Small noted that the tests administered to Hannah in 2012 are not comparable to her test scores from 2011. Ex. E at 4. She analogized such an association to comparing a "Red Delicious to a Yellow Delicious" apple. *Id.* Dr. McHale-Small deemed only five of the seventeen test scores comparable. *Id.* Of those, Hannah regressed in two subject areas, maintained the same achievement level in one area, and demonstrated some progress in the other two subject areas. *Id.* Overall, Hannah has shown minimal, if any, meaningful progress during her placement at Kimberton.

The Plaintiffs countered Dr. McHale-Small's report with their own expert analysis. Pls.' Mot. J. Supplemented Admin. R., Exhibit F (Ex. F). The Plaintiffs' expert acknowledged the

difficulty in comparing dissimilar test scores, but concluded that these scores still represented growth, overall. *Id.* at 4. He placed more emphasis on "Hannah's self-efficacy, attitude, and affect." *Id.* at 3.

The Hearing Officer's strong critique of the Kimberton placement was largely based on Hannah's failure to make meaningful progress in reading and writing. HOD at 11. The Kimberton program is admittedly unconventional. As the Hearing Officer noted, however, a private school need not meet a State's educational standards. *Id.* The Hearing Officer did not necessarily discount the personal and emotional gains made by Hannah during the 2011-2012 school year, rather he found that her growth was continuing. *Id.* at 10. The supplemental evidence provided by the Plaintiffs does not overcome the concerns correctly highlighted by the Hearing Officer. At most, the Plaintiffs' additional tests demonstrate that Hannah has stagnated at Kimberton. Although Hannah's emotional and personal well-being are important aspects of her education, growth in those areas cannot overcome her glaring lack of growth academically. The Hearing Officer was correct in limiting the consideration given to Dr. L's testimony. HOD at 11 & n.8. The father is not qualified, professionally, to assess his daughter's disability and, as a parent, his bias is unavoidable. Kimberton has not offered "significant learning," nor has it conferred a "meaningful benefit" to Hannah. *Mary T.*, 575 F.3d at 243. Kimberton is not a proper placement and the parents are not entitled to tuition reimbursement.

> ii. Attorney's Fees

The Plaintiffs are not entitled to attorney's fees under IDEA. A court may award attorney's fees to "a prevailing party" who brought suit under IDEA. § 1415(i)(3)(B)(i)(I). As Plaintiffs did not 'prevail' in this challenge, the Court declines to award attorney's fees.

V. <u>Conclusion</u>

For the above stated reasons, this Court denies Defendant's motion and Plaintiffs' cross-motion in so far as they oppose the Hearing Officer's decision. The decision of Hearing Officer Culleton is affirmed.

An appropriate order follows.